Case number 21-3428, Tressa Sherrod et al. v. Wal-Mart Stores Inc et al. Or argument 15 minutes per side. Mr. Sams for the appellants. Good morning Judge McKee, Judge Radler, Judge Davis. I'm Warren Sams. It's my honor to be here today on behalf of the appellants. On the live audio feed is John Crawford Jr. who is also a plaintiff and the father of the third. Can you reserve four minutes for rebuttal? Yes, your honor, I have. Okay, please proceed. I wanted to discuss first the jurisdictional questions that were raised by the court. And the first one being under the operative facts test, is the wrongful death claim considered to be the same claim as the other causes of action? And first of all, under the operative facts test, we contend that the wrongful death claim is definitely a different claim under Rule 54B. Because again, the test is the aggregate of operative facts which give rise to a right enforceable in the court. And the aggregate operative facts that give rise to a wrongful death claim are very different than a survivorship claim. Let's just start with those two claims. Death is that one critical fact. It may be one fact, but there is no more important or critical fact than life versus death. And that is the requirement for wrongful death. That is not a requirement for the survivorship claim and is in fact irrelevant to survivorship. How about loss of consortium? Your honor, there's two things about the loss of consortium. If you're talking about claims 15 through 17, I'll just start with from the beginning, the parties have treated this as two claims by two parties, survivorship and wrongful death. And the loss of consortium counts specifically refer to permanent loss of consortium. I don't think they're asserting, and I said this to Judge Batchelder, I don't think they're asserting separate causes of action for pre-death loss of consortium. Now the district court read it that way and issued a ruling. I'm sorry, loss of consortium and wrongful death. Isn't there some overlap between the loss of consortium claim and the wrongful death claim in that both seek to recover for injuries to the beneficiaries? If the court is interpreting 15 and 17 as stating claims for pre-death loss of consortium to the family members, if that's the interpretation, then no, there is still a significant difference in the injuries that are incurred and the rights giving rise to those injuries. And it reminds me of that morbid old joke where Mrs. Lincoln says, except for what happened, it was a pretty good play. The death is an incredibly distinctive delineation between the two losses. The facts needed to prove the losses are very different. The loss you have, in fact, we don't even have damages for pre-death loss of consortium in this case because there's no evidence that they tried to reach out to Mr. Crawford, et cetera. I guess, maybe I don't, this is not an area I practiced in, but is there a post-death loss of consortium claim? Yes, Your Honor. So wrongful death. I thought wrongful death, and I thought both of these sought to recover for the loss of companionship or were there lots of different ways to describe it due to the season's passing and the injured parties are his father or his kids. Yes, Your Honor. Wrongful death does include as one of its components loss of consortium. It also includes financial losses. So long as wrongful death includes some component of loss of consortium, aren't those claims, aren't those related to the same operative facts or whatever language you want to use for Rule 54B purposes? No, Your Honor, because the death is itself a separate event and a distinguishing event. The loss of society or reduced ability to have society with a family member because of an injury is very different than never ever being able to see that person again, never having this gaping hole in your life because your family member is dead and was wrongfully killed, going through life events without them. That is an entirely different kettle of fish than I wasn't able to get as much done with them or get things paid for because they were sick for a while. Is your point that wrongful death is a broader category? No, Your Honor. I'm saying wrongful death is a different category because there's a delineation in time. Wrongful death damages do not touch anything prior to the actual death. So the loss of consortium only begins with the death of Mr. Crawford, whereas with the loss of consortium pre-death, it ends with Mr. Crawford's death. And in fact, is there not a post? I mean, I just, I don't want to take, I'm sorry, I'm taking all your time. I just didn't understand this from the briefing. But isn't there a post-death loss of consortium loss of consortium damages or injury? No, Your Honor. If the survivorship claim, a loss of consortium claim in Ohio is for, it is the same as the personal injury claim. It's just recently, Ohio, 30 years ago or so, Ohio allowed families to also assert a, for example, when a person was severely injured, their loss of services and companionship because the person was injured. Okay. That hadn't been allowed before. And so, but that ends, there is no, you know, that is distinct. There isn't, death does not enter into that. Okay. To recover any kind of loss of consortium because of the loss due to death, that has to be in a wrongful death claim. It's not allowed in the loss of consortium claim. Loss of consortium is simply an element of the wrongful death claim, which is damages because of the loss of the person. Did I address your question properly? I think so. My colleagues might have other questions, but thank you. And I think we've addressed the jurisdictional question, but I wanted to talk about provocation here real quickly. And I think the original panel got this one exactly right when they stated the question is this, could a reasonable jury conclude that Walmart's failure to prevent Crawford from carrying what looked like an assault rifle through the store and among customers created an excited state of mind in Williams, which caused him to shoot and kill Crawford. This court's duty as sitting in diversity is to take the relevant data to decide what the law of Ohio is. And it's a matter of federalism. The court is saying, what would Ohio do? And the data that this court has are the Monin opinion and the Christopher opinion, which interpret provocation under the statute, as well as the statute itself and Ohio's laws of statutory construction. Now, things that are not disputable. Under Monin and Christopher, provocation can be intentional or unintentional. Okay? Provocation means to stimulate, arouse, irritate, or enrage. And under Monin and Christopher can be an act or an omission because the statute does not require an affirmative act. Just as the statute does not require that the provocation be intentional, since it doesn't, it can be either intentional or unintentional. Since it doesn't require that provocation be an affirmative act, it can either be an act or omission. And then. So Monin seems to be the, maybe the best case or the case that's most helpful. And that's about a bank teller blurting out this comment about knowing the motor of the, of the robber. And so I understand you're unintentional, intentional, but there's like an intentional act that, you know, arguably provokes the situation and leads to a worse consequence. What's the, relatively comparable provocation here? Well, I think the, the thing with Monin is that the court, while it says that one, the speech itself could be a provocation is that the court says it can be an act or an omission. And Christopher later confirms that same thing. So the fact that the case itself involved someone saying something does not rule out, does not override the fact. What's your, what's your, what's the conduct here? So we don't have, we don't have someone blurting out to the, to Anderson, anything, leave an employee, give officers. So what's the, what's the. Allowing him to walk in the store with the gun is the, is the conduct should rise to level provocation, which from Monin is in that case was the bank teller yelling out something. Well, Walmart's conduct and negligence does result in a statement. And the statement is, this is a gun. You know, the communication doesn't have to be verbal. The gun did all the talking. When that officer saw that gun, that was it. He says he would have never shot if he hadn't known it was a real, if he had known it was not a real gun. What's Walmart's just in your, just to say it this morning, what was Walmart's conduct that was so provocative that rises? The level of satisfying the claim Walmart's negligence created a situation that was provocative that aroused or enraged Mr. Officer Williams. So what's the significance of what turned out to really do to be false statements by the other customer in the store that actually called the police? Well, Judge McKeith, the significance of those is that the jury gets to decide if those somehow are intervening causes or override the fact that Officer Williams saw that to be a real weapon. Or that if the jury gets to decide if the fact that he was already so wired because of hearing these false statements caused him to completely disregard the fact that Mr. Crawford was holding a cell phone when he opened fire. So the jury would be able to decide that and hear those points. But I guess the point we have is that a reasonable jury could also conclude that seeing this gun and mistaking it for a real gun, as the officer testified, was the reason he opened fire or would not have opened fire but for that. Thank you. And just to finish up, it's Walmart's failure to have the item properly packaged and then failure to intervene in a way that didn't involve the police. Those are the provocative acts. And you just keep saying they're negligence. But the statute requires more than just provocation or gross negligence. You're not arguing gross negligence. So you're arguing provocation. The statute requires provocation. And the problem with dissent is that ignores that provocation can be an omission. It doesn't have to be an omission. But the omissions are. They failed to either put some constraints on the gun, such as a tether holding it there, which was easily accessible to them, to put it in blister pack where you can see through, to put it behind the counter because they understood the threat opposed to customers was real if they mistook it for a real gun. Their policy showed that. And also to even put a warning sign up in sporting goods saying don't take anything outside of sporting goods because of concern to the customers. And then when they were aware of it, that there was a problem and that people might mistake it for a real gun, treating it with the same degree of concern as it would a price check. That's what the manager said. OK, so those things, all all those different things they failed to do, any one of which would have stopped that gun from being in Mr. Crawford's hands when he was in a different area of the store, because Mr. Crawford, that's that's you're over your time. That's very helpful. But if my colleagues have questions, excuse me, otherwise we'll we'll hear from your friend on their side and then you'll get your rebuttal time. Thank you, Your Honor. Thank you. I think you're on mute, I don't know if it's Kasson or Kaysen. Apologize for that. May it please the court, counsel. I'm Patrick Kass and I represent Walmart. I'll start right there. Regardless of what you find the standard is for provocation, factually in the record, there's no evidence of it. Let's start first with what the plaintiffs appellants have said throughout the entire case. In surviving summary judgment before they settled with the police, they described Mr. Crawford holding the weapon as, quote, unprovoked. His shooting was, quote, unprovoked. Page ID one oh eight oh five. That's how they described the If you look at paragraph thirty one of the complaint, they say Mr. Crawford did nothing to provoke the shooting. He was just shopping, engaging in an act that's completely fine under Ohio law because he could handle and carry a real weapon under Ohio's Open Carry Act. Let's look at what the police said. The police officers testified that they understood Ohio had an open carry law, which lets folks carry a real weapon anywhere in the store. They had many times in their career encountered folks in a retail setting carrying a real weapon. It never resulted in any kind of injury. So, Mr. Kassen, may I interrupt you for one second? I'm sorry I was on mute and I was trying to ask the question earlier. When you when you point to the fact that the plaintiff has argued that he was unprovoked, is there a difference between saying that he was not provoked by the decedent versus whether he was provoked by some omission by Walmart? So what the plaintiffs argue is that him merely holding the rifle was not provocation to be shot by the police. They argue in their complaint. They argued in their motion against the motion against the summary judgment. So if their argument is that Walmart letting him hold the white rifle provoked the police to shoot, the same, it can't be both, right? If Mr. Crawford holding the weapon wasn't sufficient provocation for the police to shoot him, Walmart permitting him to engage in that perfect legal act also can't be provocation. And the police, the police's testimony is, I think, why it makes it clear. They encounter folks carrying weapons all the time. The police specifically testified the mere fact that he carried a weapon did not cause us to shoot him. It didn't excite us. It didn't motivate us. What motivated us was Ronald Ritchie purposely lied to the police. Ronald Ritchie purposely said he was loading the gun. Ronald Ritchie purposely said he was pointing the gun at women and children. And if you look at Ritchie's deposition, it was a lie because we timed it up with the video. He just lied. And so the police were told, you've got a guy in the store loading a weapon with bullets. And they said that's what excited them. The lie from Ronald Ritchie that made them think they had an active shooter versus the many times they had encountered people in Beaver Creek, including in stores, holding a real weapon. So the mere fact that it was mistaken for a real weapon has not been the provocation here, according to the police. And not just the police, this court. This court has repeatedly, including in the Brandenburg case, said merely having a weapon on you can never be sufficient provocation to be shot. The district court adopted that rationale in overruling the police's motion for summary judgment. As a matter of law in the Sixth Circuit, if Crawford was holding a real rifle, that could not be provocation. And finally, look at the plaintiff's expert. Plaintiff's retained Mel Tucker, a well-established police expert. And I went through this with him. And I said, there's a difference between the gun being mistaken for a real gun and being shot. And he said, that's right. The gun being mistaken as a real gun is not what led to the shooting. And he conceded that actually Mr. Crawford made a threatening movement with it, which again, the police said excited him. So factually, the fallacy in this case is that he was shot because he was mistaken for holding a gun. And that's a general statement. And you saw that Mr. Sams didn't cite you to the record on any of it. That's a general conclusion. But the actual evidentiary record before you is flat out clear. That's not what happened. What excited the police was something completely different. They never would have shot him for merely holding the gun. And the other thing the district court concluded, I think he's right. There's nothing Walmart did that provoked Mr. Crawford to pick the weapon up without the box and carry it to the complete other side of the store. The mere fact that it was displayed in the manner in which the manufacturer designed it, didn't provoke Mr. Crawford to carry it to the other side of the store. Had he looked at it in the sporting goods department right next to the box, that would have been a different situation. So Walmart did nothing to provoke this. And I think the facts of this case show why you can't interpret Monin to make provocation as the same thing as proximate cause. If you look at the appellant's brief and you look at how they define provocation, they define it as proximate cause. That Walmart letting him pick up the gun is somewhere in the soup, right? It's somewhere in a chain of events and therefore you can say it's proximate cause. But it makes no sense for it to be that standard for a couple of reasons. First, the legislature clearly wanted an increased burden. They wanted to provide shopkeepers from paying for a third-party shooting someone. And second, the increased burden is gross negligence. In both gross negligence and negligence, proximate cause is already an element of those claims, right? So if the standard for provocation is merely proximate cause, you've effectively eliminated the gross negligence standard, haven't you? Because you never get to gross negligence if you can prove proximate cause is an element of the underlying negligence claim. So it has to be something... Provocation has to be something more than negligence. It has to be. Not gross negligence, because that's covered by another part of the statute, but it's something seemingly above simple negligence. It can't be an element of negligence. Proximate cause is an element of negligence. It has to be something different than the proximate cause standard in negligence. It would make no sense otherwise. And if you look at how it's used, and you look at what the plaintiffs have pled against the police, what the court was talking about was, and I think the court said in Mungin that you have to look at whether the act resulted in what happened. And here, factually, it didn't. It has to be some kind of fault element as well, a provocation. Did him carrying the gun justify the police shooting him? It just didn't. Is that the whole question, though, Mr. Cassidy? So let's say that Mr. Ritchie made the exact same call. The officers get to the store, and they see Mr. Crawford, and it's a bright blue super soaker. So some parts of that are the same. The officer would probably say that, yeah, seeing somebody with a bright blue super soaker is not going to motivate me to open fire on them, right? But same thing. Walmart has not secured the super soaker such that a person can't walk around the store with it and maybe have some person call and that this person is aiming a real gun at people. Walmart's omission is the same. However, the element is that Crawford doesn't have something that looks like it's a real firearm, right? So when you say that the fact that he had this, was it K-157 or M-177 or whatever it is, is not the thing that motivated the officer, it strikes me as like going too far, doesn't it? You know, wasn't there some element of this in the... Sure, it wasn't the only thing. The officer didn't say that because I thought that it was a real firearm, that's why I shot him, and that was the only thing. If it's a link in the was provocation? So a link in the chain would be proximate cause, that's what they've argued. But it's got to be something more than proximate cause, it's got to actually motivate the police officers to shoot. And the record's just clear that nobody thinks the weapon motivated their officers to shoot. The officer shot because Crawford turned threatening towards them and they believed it was an active shooter. It's a much different thing if you're a police officer walking into the store and someone says they're loading bullets. And in a state where you're allowed to openly carry an assault rifle and a sword, that's one thing, there's no good reason to load it with bullets, right? So I mean, factually, we can talk about whether the super soaker is different than the gun, but with respect to the record in front of the court, there's no evidence that it motivated them. In fact, this court's decision in K, the admissions and the complaint by the plaintiff that it wasn't provoked, Mr. Crawford holding the gun, didn't provoke them, the admissions and the pleadings are all binding. So I just think factually, what you have in front of you is a record that you cannot conclude it was provoked under any standard and certainly not higher standard. And then you still, the super soaker thing doesn't get you past the other reason the district court granted summary judgment, which was because nothing provoked him to carry it to the other side of the store. Walmart did nothing to provoke that. Just think of it this way. What they're saying is Walmart should be liable because Walmart permitted Mr. Crawford to engage in a perfectly legal act. Everybody agrees with that. Mr. Crawford was engaged in a perfectly legal act for which no one should ever be shot. How can Walmart be liable for just not stopping him from doing something perfectly legal that this court has said should never result in him being shot? This is a case between him and the police. They got a good settlement from the police and Walmart's kind of an add-on and it shouldn't be. I'll finish with the 54B if I might. If you look at Lowry, McIntyre, General Acquisition, DeLore, and the recent NRA Fifth, there's a distinction. And I think this is where the appellants have missed the boat on this. There's a distinction between the cause of actions and the underlying claim. Well, what this court has consistently said, and they use the word underlying to talk about the claim, the issue isn't whether a cause of action is different and has different elements or that a cause of action might have different damage elements. The issue under this court's many decisions is whether the underlying incident's the same, the same aggregate facts. Here, the underlying injury is Mr. Crawford being shot by the police. And if you look at those five cases I just cited, there are many examples where, for example, in Lowry, you've got someone who was terminated and so you've got a breach of contract claim, which has different elements than a retaliation claim. One gets dismissed and this court said, hey, even though that has different elements of the cause of action and different damages from retaliation claim, which is breach of contract, they both track back to the same underlying injury, his termination. And so what do you have in this case? In this case, you have the same party, the estate, pursuing a negligence claim for the beneficiary of his heirs. If they get an award on the survivorship claim, that money will go to the estate and it will be distributed to his heirs. But the survivorship claim is for injuries to the decedent himself, right? It is. I thought the cases, some of them distinguished between if you had different injuries or different types of relief that might make the claims different for Rule 54B purposes. But I also thought that the wrongful death and loss of consortium went to at least to some degree some of the same injuries. And you're trying to say that was wrong. So can you let me know what you think about that? Sure, of course. So I think that's the crux of it. What the cases talk about, they don't talk about injuries in terms of different damages, loss of consortium, pain and suffering and whatnot. They talk about the underlying injury, the shooting. If you look at the more recent Inmate Fifth case where the court found jurisdiction, the court said, look, we have different injuries because Fifth Third Bank did different things, right? There's two separate things Fifth Third Bank did. One arose from that, one arose from the other. But if you look at Lowry, McIntyre, General Acquisition and DeLore, all those cases don't focus on whether you've got a different damage element on a cause of action. They focus on what they call the underlying injury, which is- Suppose I was, the premise of my question was sort of disagreeing with that, but then actually looking at the type of relief sought or the injured party and the case is saying maybe if the relief sought or the injured parties are different, those can be different claims. Even then, it was your, I mean, you heard your friend on the other side, was he right, the way he was describing loss of consortium as being different than wrongful death? No. So there's a loss of consortium claim in the wrongful death. So the wrongful death damage elements are the economic damages and the loss of consortium of the errors. Those are the two damage elements for wrongful death. Is there a pre-death and post-death? So I think I agree with you, but are pre-death and post-death, I think that's what your friend on the other side was getting at. And I think he's right on that, Your Honor, that the survivorship claim has the pain and suffering of John Crawford and the loss of consortium to those same errors, pre-death, as you have in the wrongful death, post-death. So you've got missing him because he's dead in the wrongful death and the loss of consortium pre-death, not having access to him because he was incapacitated. But again, I come back to this court, it's never focused on damage elements. If you look at Lowry, it focuses on, did those two types of loss of consortiums come from the same quote underlying injury? And they did. The underlying negligence and shooting of John Crawford. Let me see if anyone else has any other questions for you. Thank you. Thank you very much. And we'll hear then rebuttal. I think you're muted. I apologize for that. Thank you, Judge Redler. The good news is none of us are used to Zoom anymore, which is a great thing. So we're not used to it. And arguing in front of the Sixth Circuit is not my daily routine either, I'll have you know. So just with respect, just the jurisdictional question, one point. Walmart's misstating the law regarding where the money goes, et cetera, on a claim. The code section 2125.03 says that funds for a pre, for wrongful death, they go to designated representatives. Yes, we can. Thank you. I can. Thank you. I apologize, our building lost internet service here. I'm doing it in my phone hotspot. We've got some weather down here at the moment. And how much, I know the clock stopped at 311 and I hate to sound like I'm doing an NFL game, but what time was it at when I lost my connection? We're happy to give you a few extra seconds. So you're approaching the two minute warning in the football context, but we'll give you a little extra time if you need it. Thank you. But the Ferdinand decision written by Judge McKee explains the differences between survivorship and wrongful death claims and points out that survivorship claims belong to the beneficiaries and that the estate is simply a, when the estate is the designated representative, it's simply a named party. It's not the real party in interest and it's not relevant for purposes of deciding legal issues and who the claim belongs to. So they cite it for the exact opposite proposition, but I invite you to take a look at 702 F0318. With respect to provocation and saying there's no evidence of provocation, that's the jury's determination. And it's also just not true. What Walmart is associating with saying there was no provocation is that the plaintiffs were saying there's no, it was not a justified shooting. That's what all that language was, that Crawford didn't provoke the officer. And all the cases he's talking about talk about whether shooting was justified. What we're talking about is provocation under the terms of this particular statute. Now, I think the concern we have is that the case law directs this court to use the fact that an act or an omission can be a provocation. That's the law of Ohio. And to say that it must be an affirmative act is to then disregard the case law that this court needs to follow in its standing in diversity, which says it doesn't have to be an affirmative act. It can be an omission. But even accepting that, it has to be more than just negligence, right? There has to be more than just proximate cause. I think we just made this point, but we have gross negligence and then we have provocation. And provocation can't just mean negligence, otherwise there's no need for gross negligence. Absolutely. For example, the Christopher case, when the negligence was allegedly the way they designed a parking lot area, that also construes the provocation. The point was that if that was negligence, it had nothing to do with creating an excited state of mind that will lead to violence. Okay? So Christopher and Monin answer exactly this question that you're considering. What's the difference between ordinary negligence and omissions and provocative negligence and omissions? And the point is, does the omission result in the state of mind that's directly connected to that violence? And here, that's a jury issue. Because I don't care what the plaintiff's statement said about, expert said about, whether the shooting was justified or not. The officer himself, both of them testified, they would not have shot, it would not have occurred if they had known the gun was not real. And Walmart's fingerprints are all over that gun. You know, they have created, they have, you know, Mr. Crawford saw this as merchandise. He knew it wasn't lethal. You walk around with merchandise all the time. We don't think that people are going to misconstrue our intentions, misunderstand what we've got. But Walmart had a warning that specifically told Walmart, this will happen if someone carries this gun. This will happen. And on the record, and the cites are in our brief, so forgive me if I don't cite to the record. But the point is, Walmart specifically considered the warning and decided it was not meaningful, it was not relevant, and chose to disregard it. They actually talked about that warning. That's in the record. And when what exactly happened, it was warned against happens, Walmart has the part to play in that provocation. The jury has a chance to decide that. That's all we're asking for the court not to step in and insert itself for the jury or for the Ohio legislature by interpreting a provocation as an affirmative act when it's not in statute. Thank you, Your Honor. I appreciate the court's attention. Okay, well, thank you to both of you. We got through the technical challenges and the case will be submitted. Thank you. Thank you, Your Honor. Dishonorable court is now adjourned. Counsel, you can disconnect.